IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DOUGLAS BALDWIN,

     and

JAIME BALDWIN,

     Plaintiffs,

     v.                                Civil Action No. 3:23cv474

AMERICAN VAN LINES, INC.,

     Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant American Van Lines, Inc.'s ("AVL") Motion to Dismiss (the "Motion to Dismiss" or "Motion"). (ECF No. 4.) Plaintiffs Douglas Baldwin and Jaime Baldwin (collectively, the "Baldwins") responded in opposition to the Motion, (ECF No. 6), and AVL replied, (ECF No. 7).

The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid in the decisional process.

For the reasons that follow, the Court will grant in part AVL's Motion. (ECF No. 4.) The Court will dismiss Counts II, III, IV as preempted. To the extent any claim could remain in Count I, the Court will decline to exercise supplemental jurisdiction over such a claim. Even if it did, the Complaint fails to allege that, in committing conversion, AVL or its agents acted in a manner that approaches either actual malice or exhibits extreme recklessness resulting in clearly

foreseeable and immediate injury. As such, any claim for punitive damages in Count V also cannot survive. The Court will remand Count I back to the Circuit Court for Hanover County, Virginia.

## I. Factual and Procedural Background

### A.   Summary of Allegations in the Complaint[1]

#### 1.   The Baldwins Prepare to Move from Virginia to Georgia and Hire AVL to Move Their Belongings

The Baldwins bring this action against AVL, a moving company, for claims arising from AVL's ill-fated attempt on June 13, 2018 to pack and ship the Baldwins' belongings from Virginia to Georgia. (ECF No. 1-1, at 6–11.)

In March 2018, Douglas Baldwin accepted a new job in the Atlanta, Georgia metropolitan area. (ECF No. 1-1 ¶ 7.) At the time, Mr. Baldwin and his wife, Jaime Baldwin, owned 9111 Cardinal Creek Road in Mechanicsville, Virginia (the "Virginia Residence" or "Residence") where they lived with their two young children. (ECF No. 1-1 ¶¶ 1, 8.) Because Mr. Baldwin was required to begin a new job in April 2018, Mrs. Baldwin, who was expecting a child that July, was primarily responsible for preparing for the family's move from Virginia to Georgia. (ECF No. 1-1 ¶ 8.)

---

[1] For purposes of the Motion to Dismiss, (ECF No. 4), the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to the Baldwins. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

Additionally, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co*, 164 F. App'x 395, 396–97 (4th Cir. 2006) (per curiam) (citations omitted).

On or about March 30, 2018, while searching for a suitable moving company, Mrs. Baldwin contacted AVL and spoke to Harold Brown. (ECF No. 1-1 ¶ 10.) Mr. Brown "stated that AVL would disconnect appliances and there would be no need to hire third parties" for this task. (ECF No. 1-1 ¶ 10.) During the call, Mrs. Baldwin observed that Mr. Brown "was very friendly and presented [AVL] as a more caring and concerned company than is typical in the moving industry." (ECF No. 1-1 ¶ 10.) On March 30, 2018, AVL emailed Mrs. Baldwin a non-binding estimate of $6,841.07 for her move from Virginia to Georgia. (ECF No. 1-1 ¶ 11.) That same day, AVL sent Mrs. Baldwin an "advertisement represent[ing] that AVL were 'Long Distance Moving Experts,' and that AVL has 'streamlined the moving process to give [its] customers great service for the most competitive price.'" (ECF No. 1-1 ¶ 12.) AVL "coordinat[ed] with Mrs. Baldwin regarding the items to be moved," and "produced a proposed Description of Items to be moved." (ECF No. 1-1 ¶ 11.)

"On or about April 7, 2018[,] the Baldwins offered to purchase a new residence in Hoschton, Georgia" (the "Georgia Residence"). (ECF No. 1-1 ¶ 13.) The purchase of the Georgia Residence "was contingent on the sale of the [Virginia Residence]." (ECF No. 1-1 ¶ 13.) By April 19, 2018, the Baldwins "entered into a confirmed contract to sell" their Virginia Residence. (ECF No. 1-1 ¶ 13.) The Baldwins planned to purchase the Georgia Residence using the proceeds from their sale of the Virginia Residence. (ECF No. 1-1 ¶ 18.)

By April 27, 2018, Mrs. Baldwin had chosen to hire AVL for her family's interstate move. (ECF No. 1-1 ¶ 14.) That day, she submitted "a Credit Card Authorization . . . which included authorization to pay $3,865.00 to AVL." (ECF No. 1-1 ¶ 15.) This amount was intended to pay a portion of the final moving cost. (ECF No. 1-1 ¶ 15.) Around this time, Mrs.

3

Baldwin received an updated non-binding estimate for the move, as well as a "proposed Description of [I]tems to be moved." (ECF No. 1-1 ¶ 14.)

AVL agreed that it would pack and load the Baldwins' belongings on June 13, 2018. (ECF No. 1-1 ¶ 17.) Both the Baldwins and AVL understood that during the Baldwins' move, AVL's "truck would not share cargo with other customers or other moves or deliveries." (ECF No. 1-1 ¶ 19.) AVL further understood that the day after the move, "the Baldwins would close on the sale of [the Virginia Residence]" and use the proceeds of this sale to purchase the Georgia Residence. (ECF No. 1-1 ¶ 19.) Thus, AVL understood that the Baldwins' ability to sell the Virginia Residence and purchase the Georgia Residence was contingent "on proper contract performance by AVL." (ECF No. 1-1 ¶ 19.)

### 2. The June 13, 2018 Water Supply Break and its Immediate Aftermath

By June 13, 2018, to reduce expenses, the Baldwins had packed all of their belongings themselves. (ECF No. 1-1 ¶ 18.) The Baldwins placed a "large majority of packed boxes of their household goods" in their garage for pickup. (ECF No. 1-1 ¶ 18.)

Early in the morning on June 13, 2018, AVL employees arrived at the Virginia Residence to begin the Baldwins' move. (ECF No. 1-1 ¶ 20.) An AVL driver named Travis was the first employee to arrive and "began to inventory the property to be loaded onto the moving van." (ECF No. 1-1 ¶ 20.) "[A]t 9:30 a.m.[,] AVL's representatives began to load the truck." (ECF No. 1-1 ¶ 20.) At 1:10 p.m., Mrs. Baldwin left the Virginia Residence to attend a medical appointment. (ECF No. 1-1 ¶ 20.) During Mrs. Baldwin's absence, Mrs. Baldwin's mother-in-law Merrill Baldwin and brother-in-law Andrew Baldwin were present to "respond to any inquiries from AVL." (ECF No. 1-1 ¶ 20.)

At approximately 1:30 p.m., while Mrs. Baldwin was still out, "AVL's employees began disconnecting the [second floor] washing machine . . . from its water supply." (ECF No. 1-1 ¶ 21.) During this process, at least one AVL employee "negligently broke the washing machine water supply pipes." (ECF No. 1-1, at 7 ¶ 21, ¶ 28.) Water gushed from the broken pipes for over an hour until the fire department, summoned by Mrs. Baldwin, turned off the Virginia Residence's water and electrical supply. (ECF No. 1-1, at 7 ¶ 21, 8 ¶ 22.)[2] By this point, there was "massive flooding throughout the second and first floors of the [Virginia] Residence." (ECF No. 1-1, at 7 ¶ 21). Water eventually flowed underneath the Residence, causing additional damage. (ECF No. 1-1 ¶ 25.)

The flooding was so significant that it caused the ceiling over the garage to collapse. (ECF No. 1-1, at 8 ¶ 21.) This allowed the water from the broken pipes to "cascade[]over all" the "dozens of boxes" in the garage that AVL had not yet placed in its truck. (ECF No. 1-1, at 8 ¶ 21.) The Baldwins' sofa and love seat also incurred water damage after "AVL employees moved [these items] underneath the dripping ceiling in the family room." (ECF No. 1-1, at 8 ¶ 21.)

### 3.    AVL Transports the Baldwins' Belongings to North Carolina Before Returning Them to Virginia

On June 13, 2018, after the flooding, Mrs. Baldwin requested that AVL transport her household goods to "a Serv[]Pro operation located" in Chesterfield County in Richmond, Virginia where they could be preserved and restored. (ECF No. 1-1 ¶ 26.) By this point, AVL's van contained "the Baldwins' property that" AVL had loaded onto the truck before the flooding began. (ECF No. 1-1 ¶ 27.) The AVL driver, Travis, refused to comply with this request. (ECF

_____

[2] The Complaint provides two paragraphs labeled "21" and two paragraphs labeled "22," on pages 7 and 8. (ECF No. 1-1, at 7 ¶¶ 21–22, 8 ¶¶ 21–22.)

No. 1-1 ¶ 27.)  Travis explained that "he was required to drive the van . . . to North Carolina for the night and make a delivery of other property for a different move, even though the Baldwins' move was supposed to have been exclusive." (ECF No. 1-1 ¶ 27.)  Travis stated that after he completed the North Carolina delivery, "he would be able to return to Richmond with the Baldwins' property." (ECF No. 1-1 ¶ 27.)  At this time, Travis did not address "charging the Baldwins for carrying their property to North Carolina and then" bringing it to "the ServPro location in Chesterfield." (ECF No. 1-1 ¶ 27.)

At approximately 5:30 p.m. on June 13, 2018, while some of the Baldwins' belongings remained in AVL's truck, Travis presented Mrs. Baldwin "with a form 'Interstate Household Goods Bill of Lading Order for Service.'" (ECF No. 1-1 ¶¶ 29–30.)  While reviewing the form, which was approximately "five pages of [eight] point type . . . Travis snatched the papers from her hand . . . tore the carbon copies apart, [and] handed them" along with the property inventory to Mrs. Baldwin. (ECF No. 1-1 ¶ 30.)  Mrs. Baldwin never signed the form.  Travis then returned to the truck and left. (ECF No. 1-1 ¶ 30.)

AVL transported the Baldwins' property to North Carolina before returning it to Richmond. (ECF No. 1-1 ¶ 27.)  AVL later informed Mrs. Baldwin that it would charge her for this transportation, "whether she agreed to this or not." (ECF No. 1-1 ¶ 27.)  After AVL "refus[ed] to return the Baldwins' property to Virginia" without payment, Mrs. Baldwin "agreed under protest" to pay for the transportation of her belongings "to and from North Carolina." (ECF No. 1-1 ¶ 27.)

### 4.    The Baldwins Recover a Portion of Their Damages from USAA and AVL

On June 14, 2018, as a result of the significant water damage and due to the lack of water or electrical supply, the Virginia Residence was "uninhabitable." (ECF No. 1-1, at 8 ¶ 22.)

6

Consequently, the Baldwins were unable to close the sale of the Virginia Residence on that day, as previously intended. (ECF No. 1-1, at 8 ¶ 22.) In turn, the Baldwins were also "unable to close on and purchase the [Georgia Residence]." (ECF No. 1-1, at 8 ¶ 22.)

The Baldwins were able to recover at least a portion of their property damages from AVL and their insurer, USAA. (ECF No. 1-1 ¶¶ 31–32.)[3] Specifically, USAA paid for "damage to the [Virginia] Residence and became subrogated to the claims relating to the losses which [USAA] paid." (ECF No. 1-1 ¶ 31.) AVL also paid "a plumbing and drain service company" $395.00 "to replace the broken water supply line" in the second-floor laundry room. (ECF No. 1-1, at 7 ¶ 22, ¶ 32.)

**B.** **Procedural History**

On June 28, 2022, the Baldwins filed a Complaint against AVL in Hanover County Circuit Court. (ECF No. 1-1, at 2.)[4] In their Complaint, the Baldwins brought five counts against AVL:

      (I)   common law conversion;
      (II)  violation of the Virginia Consumer Protection Act ("VCPA");
      (III) breach of contract;
      (IV) common law fraud; and,
      (V)  punitive damages.

---

[3] In their Complaint, the Baldwins state that they "make no claim for losses paid to them by USAA [their insurer]." (ECF No. 1-1 ¶ 31.) "[R]ather", the Baldwins make a "claim . . . for losses and damages not reimbursed and to which USAA was not subrogated." (ECF No. 1-1 ¶ 31.) Thus, the Baldwins do not seek recovery for property damage—they seek compensation for losses not subject to subrogation. (ECF No. 1-1 ¶ 42.) The Baldwins later confirm that "damages to the Baldwins' property are not the subject of this case as these were covered by their insurer." (ECF No. 6, at 7.)

[4] The Complaint states that it was filed "after nonsuit taken by the [Baldwins] by order entered December 29, 2021 in case No. CL20002959-00." (ECF No. 1-1, at 2.)

(ECF No. 1-1, at 13–15.)  The Baldwins seek a minimum of $41,000 and ask the Court to treble their damages pursuant to the VCPA.  (ECF No. 1-1, at 15.)  The Baldwins also request "reasonable attorney's fees under the [VCPA]" as well as costs, prejudgment interest, $7,500 in punitive damages, and "all other proper relief."  (ECF No. 1-1, at 15–16.)

On July 26, 2023, AVL removed the Baldwins' case from the Circuit Court for Hanover County, Virginia to this Court pursuant to 28 U.S.C. § 1441.[5]  (ECF No. 1, at 2.)  As its bases for removal, AVL asserts both federal question jurisdiction under 28 U.S.C. § 1331[6] and diversity jurisdiction under 28 U.S.C. § 1332.[7]  (ECF No. 1, at 2.)

Prior to removal, AVL filed a consolidated Demurrer, Motion Craving Oyer,[8] Answer and Affirmative Defenses (the "Demurrer").  (ECF No. 1-2.)  In its Demurrer, AVL contends

---

[5] Section 1441(a) provides, in pertinent part:

[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

[6] Section 1331 provides:  "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

[7] Section 1332 confers subject matter jurisdiction when the parties are diverse and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a).

[8] In federal court, no procedural device analogous to the Motion Craving Oyer exists.  "In Virginia procedure, a motion craving oyer allows a party to demand production of a document referenced in a pleading, thus incorporating that document into the pleading itself."  *Eversole v. Ford Motor Co.*, No. 3:11cv428 (DJN), 2012 WL 1161420, at *3 n.5 (E.D. Va. Apr. 6, 2012) (citing *Wards Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 518 (Va. 1997)).  Absent a federal basis for AVL's request, the Court will deny the Motion Craving Oyer.

But federal courts may consider documents sufficiently referred to in a complaint or central to a plaintiff's claim when the documents' authenticity is not disputed.  *See Witthohn*, 164 F. App'x. at 396–97; *Brentzel v. Fairfax Transfer and Storage, Inc.*, No. 21-1025, 2021 WL

that the Carmack Amendment (described later) preempts all of the Baldwins' claims.  (ECF No. 1-2, at 1.)  In the alternative, AVL contends that the Baldwins failed to adequately plead any of their claims.  (ECF No. 1-2, at 2.)  Accordingly, AVL seeks the dismissal of all of the Baldwins' claims with prejudice.  (ECF No. 1-2, at 3.)

Following removal, AVL filed a Motion to Dismiss, repeating the bases for dismissal articulated in its Demurrer.  (ECF No. 4, at 1; ECF No. 5, at 1, 3–13.)[9]

## II.  Standards of Review

### A.      Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

---

6138286, at *2 (4th Cir. Dec. 29, 2021) (per curiam) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999) for the proposition that a court may consider documents "referred to in the complaint . . . if such materials are integral to and explicitly relied on in the complaint" (internal quotation marks omitted)).

[9] AVL states that it filed the Motion to Dismiss "out of an abundance of caution", and "specifically request[s] [a] ruling on [its] previously-filed demurrer."  (ECF No. 4, at 1 n.1 (citing Fed. R. Civ. P. 81(c)(2)).)  AVL acknowledges that its Demurrer "has been converted into [its] functionally equivalent Motion to Dismiss."  (ECF No. 5, at 1 n.1.)  In federal court, Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss.  Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

Under Rule 81(c)(2), when a case is removed, "repleading is unnecessary unless the court orders it."  Fed. R. Civ. P. 81(c)(2).  Accordingly, "after removal, the demurrer filed in state court will be treated as the federal equivalent—a motion to dismiss for failure to state a claim."  *Morgan v. Wal-Mart Stores E., LP*, No. 3:10cv669 (HEH), 2010 WL 4394096, at *2 (E.D. Va. Nov. 1, 2010); *see also McCray v. Ardelle Assocs. Inc.*, No. 4:14cv158 (RGD), 2015 WL 3886318, at *3 (E.D. Va. June 23, 2015) ("The obvious implication of this language is that a party need not refile pending state motions in the federal court.") (citations omitted).

Although this Court did not order repleading, because AVL's Demurrer and its Motion to Dismiss seek identical relief, the Court will speak to AVL's Motion to Dismiss in this decision. AVL's Demurrer will be denied as MOOT.  (ECF No. 1-2.)

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)). To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief."). Mere labels and conclusions declaring that the plaintiff is entitled to relief

are not enough. *Twombly*, 550 U.S. at 555. Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

(quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S.

at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This analysis is context-specific

and requires "the reviewing court to draw on its judicial experience and common sense."

*Francis*, 588 F.3d at 193 (citation omitted). The court must assume all well-pleaded factual

allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington

Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) (a court

deciding a Rule 12(b)(6) motion to dismiss "'must accept as true all of the factual allegations

contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff'"

(quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir.

2011)). This principle applies only to factual allegations, however, and "a court considering a

motion to dismiss can choose to begin by identifying pleadings that, because they are no more

than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

**B.     Removal Via 28 U.S.C. § 1441(a) and Federal Question Jurisdiction Under 28 U.S.C. § 1331**

"Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a)); *see also Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (same). "One category of cases of which district courts have original jurisdiction is '[f]ederal question' cases: cases 'arising under the Constitution, laws, or treaties of the United States.'" *Id.* (alteration in original) (quoting 28 U.S.C. § 1331). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

Generally, whether subject matter jurisdiction exists turns on the plaintiff's "'well-pleaded complaint.'" *Davila*, 542 U.S. at 207 (quoting *Franchise Tax Bd. of Cal v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 9–10 (1983)). A federal defense, because it does not appear on the face of the complaint, usually cannot provide a basis for removal. *Taylor*, 481 U.S. at 63 (citation omitted); *Smith v. Logan*, 363 F. Supp. 2d 804, 808 (E.D. Va. 2004) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). "However, if a state law cause of action has been completely preempted by federal law, any claim based on the *completely* preempted state law is considered a federal claim arising under federal law." *Smith*, 363 F. Supp. 2d at 808 (citing *Caterpillar, Inc.*, 482 U.S. at 393) (emphasis in original). Accordingly, a defendant may remove a state action to federal court if federal law completely preempts a claim "even if pleaded in terms of state law," because the cause of action "is in reality based on federal

11

law." *Davila*, 542 U.S. at 207–08 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)) (internal quotation marks omitted).

> ## C.    **The Carmack Amendment**

The Carmack Amendment to the Interstate Commerce Act (the "Carmack Amendment" or the "Amendment"), 49 U.S.C. § 14706,[10] was enacted in 1906. *5K Logistics, Inc. v. Daily Exp., Inc.*, 659 F.3d 331, 335 (4th Cir. 2011). Through the Carmack Amendment, Congress intended to provide a "nationally uniform policy governing interstate carriers' liability for property loss." *Shao v. Link Cargo (Taiwan) Ltd.*, 986 F.2d 700, 704–05 (4th Cir. 1993) (quoting *New York, New Haven & Hartford R.R. v. Nothnagle*, 346 U.S. 128, 131 (1953)). As enacted, the Carmack Amendment balances the rights of shippers and carriers: "the Carmack Amendment relieves carriers of the burden of multiple state regulations of their business, [and] it also facilitates claims by shippers, requiring them to make only a prima facie case in order to

---

[10] 49 U.S.C. § 14706(a)(1) provides, in relevant part:

**(a) GENERAL LIABILITY.—**

> **(1) MOTOR CARRIERS AND FREIGHT FORWARDERS.—**
> A carrier providing transportation or service . . . shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service . . . are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading . . . . Failure to issue a receipt or bill of lading does not affect the liability of a carrier.

49 U.S.C. § 14706(a)(1).

shift the burden to the carrier to prove that it was not negligent and that the damage was caused by an event excepted by the common law." *5K Logistics Inc.*, 659 F.3d at 335 (citation omitted).

For a federal court to have federal subject matter jurisdiction over a claim under the Carmack Amendment, the amount in controversy must exceed $10,000. *See* 28 U.S.C. § 1445(b);[11] *see also Bad Co. Inc. v. Expeditors Int'l of Washington, Inc.*, No. 4:17cv1 (MSD), 2017 WL 1969479, at *3 (E.D. Va. May 4, 2017) ("a federal district court has original jurisdiction over claims arising under the Carmack Amendment '*only if* the matter in controversy . . . exceeds $10,000, exclusive of interest and costs'" (quoting 28 U.S.C. § 1445(b)) (emphasis in original)).

The Carmack Amendment "imposes liability on carriers for the 'actual loss or injury to the property [in its care],' 49 U.S.C. § 14706(a)(1), not necessarily for the financial burden on the complainant." *5K Logistics, Inc*, 659 at 336; *see also Nachman v. Seaford Transfer, Inc.*, No. 4:18cv62 (MSD), 2018 WL 4186397, at *2 (E.D. Va. Aug. 31, 2018) ("Pursuant to the Carmack Amendment, a carrier is liable for the *actual loss or injury* to the property it transports." (internal quotation marks and citation omitted) (emphasis in original)).  In so doing, the Carmack Amendment reflects "Congress' intent to create a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading." *Shao*, 986 F.2d at 704.

---

[11] Section 1445, titled "Nonremovable actions", provides, in relevant part:

(b) A civil action in any State court against a carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under section 11706 or 14706 of title 49, may not be removed to any district court of the United States unless the matter in controversy exceeds $10,000, exclusive of interest and costs.

28 U.S.C. § 1445(b).

The Carmack Amendment requires an interstate carrier to issue a bill of lading or receipt for property it transports. 49 U.S.C. § 14706(a)(1). Where an interstate carrier has failed to issue a bill of lading however, the shipping contract is nonetheless implied, and the Carmack Amendment still applies. *See* 49 U.S.C. 14706(a)(1) ("Failure to issue a receipt or bill of lading does not affect the liability of a carrier."); *Brentzel*, 2021 WL 6138286, at *3 (stating same) (citing *CNA Ins. Co. v. Hyundai Merchant Marine Co.*, 747 F.3d 339, 355 (6th Cir. 2014)).

To determine whether a shipment is an interstate shipment for purposes of the Carmack Amendment, courts can look to the "'essential character of the commerce' . . . reflected by the 'intention formed *prior to* shipment, pursuant to which property is carried to a selected destination by a continuous or unified movement.'" *Swift Textiles, Inc. v. Watkins Motor Lines, Inc.*, 799 F.2d 697, 699 (11th Cir. 1986) (quoting *United States v. Erie R.R. Co.*, 280 U.S. 98, 102 (1929) and *Great N. Ry. Co. v. Thompson*, 222 F. Supp. 573, 582 (D.N.D. 1963) (emphasis added)); *Monga v. A.B.S. Moving & Storage, Inc.*, No. PWG-16-2000, 2017 WL 749236, at *3 (D. Md. Feb. 27, 2017) (stating same) (citations omitted); *Bongam Inv. Corp. v. Pioneer Shipping Logistics, Inc.*, Civ. No. CCB-09-965, 2009 WL 1766782, at *2 (D. Md. June 19, 2009) (stating same) (collecting cases).

It is black letter law that the Carmack Amendment has broad preemptive effect. *See, e.g.*, *Shao*, 986 F.2d at 704–05; *Nachman* 2018 WL 4186397, at *2 (citing *5K Logistics, Inc*, 659 F.3d at 335). The Carmack Amendment reaches "'all losses resulting from any failure to discharge a carrier's duty as to any part of the agreed transportation.'" *Brentzel*, 2021 WL 6138286, at *5 (quoting *Ga., Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 196 (1916)) (concluding that "state law claim for damage to and theft of [plaintiff's] property *during shipping*" from Virginia to Washington, D.C. "was preempted by the Carmack Amendment" (emphasis added)). Also, a

14

"wealth of case law hold[s] that short-term storage prior to, during, or after, an interstate trip is part of the transportation process, rendering state law claims for damages incurred during storage preempted by [the] Carmack [Amendment]." *Nachman*, 2018 WL 4186397, at *4 n.5 (collecting case law).

Despite the Carmack Amendment's broad preemptive effect, it is nonetheless "overly simplistic to state that any event that merely touches upon interstate transportation of goods is covered by the Carmack Amendment." *Rehm v. Baltimore Storage Co.*, 300 F. Supp. 2d 408, 413, 415–16 (W.D. Va. 2004) (citing *Shao*, 986 F.2d at 705) (the Carmack Amendment preempted plaintiffs' VCPA claim, among others, but did not preempt recovery for damages to residence caused by interstate carrier unloading shipped property); *see also Nachman*, 2018 WL 4186397, at *3–*5 (finding that preemption might not apply to actions of company taken as a "warehouseman", but would apply only to the extent damages occurred as a result of defendant "act[ing] as a carrier 'arranging for' the interstate transportation of [p]laintiff's belongings"); *Brentzel v. Fairfax Transfer & Storage, Inc.*, No. 1:20cv1076 (TSE), 2020 WL 12437871, at *3 (E.D. Va. Dec. 10, 2020), *aff'd in part, appeal dismissed in part*, No. 21-1025, 2021 WL 6138286 (4th Cir. Dec. 29, 2021) (declining to exercise pendent jurisdiction over state law claim of conversion of property, where claim involved stolen cash and diamond ring that were not shipped from Virginia to Washington, D.C., but were contents in the D.C. residence before the move began)[12]; *Gale v. Ramar Moving Sys., Inc.*, Civ. No. CCB-13-487, 2013 WL 3776983, at

---

[12] AVL suggests that in *Brentzel*, the Fourth Circuit held that the "Carmack [Amendment] applied even though Plaintiff argued that [t]he [stolen] cash and ring were not part of contents being moved from Virginia to [Washington, D.C.], and instead were a part of the contents of the [Washington, D.C.] Main Residence, since before the move began." (ECF No. 5, at 5 (quoting *Brentzel*, 2021 WL 6138286, at *1) (internal quotation marked omitted).) But this does not recognize that at oral argument before the *Brentzel* district court defendant Fairfax Transfer and Storage, Inc. clarified "that [it did] not seek dismissal based on preemption" as to its state law

*2 (D. Md. July 16, 2013) (finding residence and non-shipped goods subject to a state negligence claim because not preempted by the Carmack Amendment) (citations omitted)[13]; *Stabler v. Fla. Van Lines, Inc.*, No. CIV.A. 11-0103-WS-N, 2012 WL 32660, at *8–*9 (S.D. Ala. Jan. 6, 2012) (distinguishing between: (1) household goods packed and shipped to another state, to which Carmack Amendment preemption applied; and (2) separate goods packed from the same house on the same day but shipped to an in-state storage facility with no evidence suggesting that the stored goods were ever intended to be transported out of state, to which Carmack Amendment preemption did not apply).

### III. Analysis

AVL's Motion to Dismiss seeks dismissal of all counts as preempted by the Carmack Amendment and for failure to state a claim. (ECF No. 5, at 2.) For the reasons discussed below, factual development would have to continue regarding whether the Carmack Amendment preempts Count I (conversion), so the Motion to Dismiss would generally be denied as to that count for further factual inquiry. Ultimately, however, the $1,500 demand in the conversion count does not exceed the necessary $10,000 amount in controversy for the Carmack Amendment to confer federal subject matter jurisdiction. *See* 28 U.S.C. § 1445(b); *Bad Co. Inc.*, 2017 WL 1969479, at *3. As such, the Court will decline to exercise supplemental jurisdiction[14]

---

conversion claim as to stolen cash and diamond ring. *Brentzel, Inc.*, 2020 WL 12437871, at *3. The district court ultimately declined to exercise pendent jurisdiction over this claim and the Fourth Circuit affirmed the district court's judgment. *Brentzel*, 2021 WL 6138286, at *6.

[13] Some federal district courts, however, "have held that the [Carmack] Amendment preempts claims alleging damage to real or other property caused by a shipper during delivery." *Gale*, 2013 WL 3776983, at *2 (citing *Raineri v. N. Am. Van Lines, Inc.*, 906 F. Supp. 2d 334, 340 (D.N.J. 2012)).

[14] 28 U.S.C. § 1367 provides, in relevant part:

over this partial, and sole, remaining count.  The Court will remand Count I, the conversion claim, to the Circuit Court for Hanover County, Virginia.

The Court will dismiss the remainder of the Baldwins' claims.  The Carmack Amendment preempts Counts II (VCPA), III (breach of contract), and IV (common law fraud).  Count V (punitive damages) also does not survive because it constitutes a request for relief and because the Court would decline to exercise pendant jurisdiction.  Even if the Court were to address punitive damages, the Complaint fails to allege that in committing conversion, AVL or its agents acted in a manner that approaches either actual malice or exhibits extreme recklessness resulting in clearly foreseeable and immediate injury.

### A. The Baldwins' Claim for Conversion (Count I) Survives the Dismissal Motion

As to Count I's conversion claim, AVL asserts that the Carmack Amendment wholly preempts the Baldwins' conversion claim.  (ECF No. 5, at 5.)  In the alternative, AVL argues that

---

(c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if –

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstance, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *see also Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("[A] court has discretion to dismiss or keep a case when it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)); *Keeler v. Chang*, No. 4:15cv19 (ALWA), 2015 WL 10690451, at *4 (E.D. Va. Aug. 28, 2015), *aff'd*, 624 F. App'x 113 (4th Cir. 2015) (declining to exercise supplemental jurisdiction over state law claims after court dismissed all federal claims on a motion to dismiss).

the Baldwins have failed to state a claim for conversion. (ECF No. 5, at 6–7.) AVL says that "Plaintiffs acquiesced . . . albeit grudgingly" to AVL first "tak[ing] their property to North Carolina before returning it to the [ServPro]" in Virginia. (ECF No. 5, at 6.) AVL further maintains that "there is no allegation in the Complaint that Plaintiffs forbade such transport or [] demanded that AVL immediately unload and return their property", nor did the Baldwins "sustain[] any damages" as a result. (ECF No. 5, at 6–7; ECF No. 7, at 4.)

The Baldwins disagree, asserting that AVL "mooted" "the original plan for an interstate move" when AVL ruined their property and damaged their house to the point where it could not be sold, meaning they could not purchase the Georgia house and their property had to remain in Virginia. (ECF No. 6, at 9.) Read favorably, the property damage led Mrs. Baldwin to seek a separate oral contract to take the damaged goods, *intrastate*, to the ServPro in Virginia. And, indeed, the property ultimately was delivered to Virginia, not interstate. The Baldwins say that the Carmack Amendment does not reach AVL's "unilateral decision . . . to take the Baldwins' household goods already loaded at the time of AVL's destruction of the Baldwins' house on an undesired interstate round trip journey to North Carolina." (ECF No. 6, at 9–10.)[15] This unilaterally-imposed week-long carriage of the Baldwins' property to and from North Carolina was undertaken against the Baldwins' will. (ECF No. 6, at 10; *see also* ECF No. 1-1 ¶¶ 26–28.) Moreover, Mrs. Balwin agreed to pay for the unneeded and improper round-trip transport to and from North Carolina under protest, and under compulsion of AVL's refusal to return the Baldwins' property to Virginia. (ECF No. 1-1 ¶ 27.) The Baldwins assert AVL's liability for

---

[15] In their Complaint, the Baldwins first contended that the Carmack Amendment would not apply because Mrs. Baldwin never signed AVL's bill of lading. (ECF No. 1-1 ¶ 33.) The Baldwins later correctly conceded that this position could not be supported and withdrew it. (ECF No. 6, at 3); *see also Brentzel*, 2021 WL 6138286, at *2.

rests on taking their "already packed" property "to North Carolina" without Mrs. Baldwins' consent and against her "express opposition." (ECF No. 1-1 ¶ 37.) As a result, the Baldwins suffered at least $1,500 in damages. (ECF No. 1-1 ¶ 38.)

Reading the allegations in the Complaint most favorably to the Baldwins, the Baldwins, at least in this procedural posture, hold the better hand.[16]

### 1.    Legal Standard:  Conversion

Under Virginia law, "conversion requires proof of a 'wrongful exercise or assumption of authority . . . over another's goods, depriving [them] of their possession.'" *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 574 (2011) (quoting *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (1956)).  "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of [their] rights, or inconsistent therewith, may be treated as a conversion." *Id.* (quoting *Universal C.I.T. Credit Corp.*, 92 S.E.2d at 365); *see also Desalle v. TitleMax of Va., Inc.*, No. 3:14cv834 (HEH), 2014 WL 12771139, at *2 n.3 (E.D. Va. Dec. 23, 2014) (stating same).  "The measure of damages in a conversion action [under Virginia law] is the market value of the property at the time of conversion." *Desalle*, 2014 WL 12771139, at *2 (citing *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, No. 3:09cv58 (REP), 2011 WL 4625760, at *2 (E.D. Va. Oct. 3, 2011)).

### 2.    The Baldwins' Claim for Conversion Might Not Have Been Fully Dismissed

With factual development, the Baldwins could sufficiently allege plausible facts to support what could be a conversion claim.  Reading the facts of the Complaint in the light most

---

[16] As a matter of law, the Carmack Amendment wholly preempts Count I "to the extent that it seeks to recover for damages occurring while [AVL] acted as a carrier 'arranging for' the interstate transportation of [the Baldwins'] belongings." *See Nachman*, 2018 WL 4186397, at *3.

favorable to the Baldwins, the essential character of AVL's *initial* services were for interstate shipment from Virginia to Georgia. But it is unclear if or when AVL's services shifted from that of an *interstate* carrier to an *intrastate* carrier. It would also remain an open question as to whether AVL acted as a warehouseman.

After Mrs. Baldwin asked an AVL employee to "take the Baldwins' goods to the Serv[]Pro location [in Virginia]" the AVL employee "refused this arrangement", telling Mrs. Baldwin that he was required to drive the van—with the Baldwins' property that had been packed before at least one AVL employee had broken the water connection—to North Carolina for the night to make a delivery for a different customer. (ECF No. 1-1 ¶¶ 26–27.) He added that, after that delivery, "he would be able to return to Richmond with the Baldwins' property." (ECF No. 1-1 ¶¶ 26–27.) Especially because the purported requirement to drive to North Carolina ran counter to the agreement that AVL's "truck would not share cargo with other customers or other moves or deliveries," (ECF No. 1- 1 ¶ 19), reading the allegations in the Complaint favorably to the Baldwins, further factual development would have been needed to determine whether this can be deemed a wrongful assumption of the Baldwins' property inconsistent with their rights.

This is true because AVL transported the Baldwins' items to North Carolina either as (1) an act of temporary storage in preparation for an interstate shipment (which would trigger preemption); or (2) with the knowledge that "[t]he original plan for an interstate move to Georgia was mooted", (ECF No. 6, at 9), and that the Baldwins no longer wished for AVL to transport their property out of state at any point in time (which would not trigger preemption). *See Nachman*, 2018 WL 4186397, at *3 & n.4 (observing that "transportation under the Carmack Amendment is a broad concept, and includes acts taken by a carrier *in preparation for* transit and

following transit, including, at a minimum, negotiations for carriage, loading activities, shipment activities, unloading activities, and temporary storage" (emphasis in original)). Accordingly, the Court will not dismiss Count I on the basis of preemption.

Viewing the allegations in the light most favorable to the Baldwins, AVL—albeit temporarily—transported the Baldwins' property to North Carolina against the Baldwins' will, causing at least $1,500 in damages. (ECF No. 1-1 ¶¶ 26–28, 37–38.) The factual underpinning in the record is cloudy regarding whether Mrs. Baldwin gave permission to take the property. Moreover, whether or not Mrs. Balwin attempted to create a separate oral contract, as alleged, the Baldwin's property ultimately was delivered intrastate—from Virginia to Virginia. The record would benefit from further factual development of how and when the changes in delivery came about. Accordingly, the Court finds that the factual development is required to determine whether Baldwins might have plausibly alleged that AVL committed conversion by wrongfully exerting dominion over their property in denial of their rights. *See Nachman*, 2018 WL 4186397, at *3. The Court will not grant the Motion to Dismiss at this juncture. *See Condo. Servs., Inc.*, 281 Va. at 574.

As such, because the Baldwins seek only $1,500 in damages for this conversion claim, even if further factual development revealed that it is preempted by the Carmack Amendment, the Court would not have federal subject matter jurisdiction over this claim under the Carmack Amendment because the amount in controversy does not exceed $10,000. *See* 28 U.S.C. § 1445(b); *Bad Co. Inc.*, 2017 WL 1969479, at *3.

**B.     The Carmack Amendment Preempts Counts II–IV of the Baldwins' Claims**

Although a narrow exception to the Carmack Amendment could possibly apply here, "[t]he [Carmack] Amendment's preemptive force is exceedingly broad and embraces 'all losses

21

resulting from any failure to discharge a carrier's duty as to any part of the agreed [interstate] transportation.'" *Brentzel v. Fairfax Transfer & Storage, Inc.*, No. 21-1025, 2021 WL 6138286, at *5 (4th Cir. Dec. 29, 2021) (per curiam) (quoting *Ga., Fla. & Ala. Ry.*, 241 U.S. at 196). This includes "loss or damage to interstate shipments." *Id.* (citation and internal quotation marks omitted). As stated, the Carmack Amendment wholly preempts a state law claim when "it seeks to recover for damages occurring while [a d]efendant acted as a carrier 'arranging for' the interstate transportation of Plaintiff's belongings." *Nachman*, 2018 WL 4186397, at *3 (quoting 49 U.S.C. § 13102(23)).

Reading the facts of the Complaint in a light most favorable to the Baldwins, the Baldwins hired AVL to ship their belongings from Virginia to Georgia. Because AVL never transported the Baldwins' items to Georgia, and ultimately delivered the Baldwins' property to a secondary location in Virginia, the boundaries of if, or when, AVL's services shifted from that of an *interstate* carrier to an *intrastate* carrier remain blurry, affecting Count I as described above.[17]

The same is not true of the remaining substantive counts. Even read favorably to the Baldwins, the Complaint makes plain that if AVL's services shifted from that of an interstate carrier to an intrastate carrier at *any* point, this shift occurred *after* AVL disconnected the water supply line, causing damage to the Baldwins' Virginia Residence. (ECF No. 1-1 ¶¶ 20–27.) Accordingly, the Carmack Amendment wholly preempts Counts II–IV of the Baldwins' claims because these claims solely relate to AVL "act[ing] as a carrier 'arranging for' the interstate transportation of [the Baldwins'] belongings." *See Nachman*, 2018 WL 4186397, at *3; *see also*

---

[17] As stated above, even if further factual development revealed that the Baldwins' conversion claim (Count I) is preempted by the Carmack Amendment, the Court would not have federal subject matter jurisdiction over this claim under that statute because the amount in controversy does not exceed $10,000. *See* 28 U.S.C. § 1445(b); *Bad Co. Inc.*, 2017 WL 1969479, at *3.

*Brentzel*, 2021 WL 6138286, at *5. Accordingly, the Court will dismiss Counts II through IV as preempted. The Court will address these counts seriatim.

### 1.    The Carmack Amendment Preempts Count II, the VCPA Claim

Count II of the Complaint alleges violations of the Virginia Consumer Protection Act. (ECF No. 1-1 ¶¶ 39–42.) In that count, the Baldwins assert that AVL: (1) "[m]israepresent[ed] that the services provided by AVL had an[d] would have certain quantities, characteristics, ingredients, uses, or benefits"; (2) "[m]israepresent[ed] that AVL's services were and would be of a particular standard, quality, grade, style, or model as represented[]"; (3) [a]dvertis[ed] AVL's services with intent not to sell or provide them as advertised, or with intent not to sell or provide the services at the price or upon the terms advertised"; and (4) used "other deceptions, fraud, false pretense, false promises, or misrepresentation in connection with a consumer transaction, to-with moving of the Baldwins' personal property to Ho[s]chton, Georgia." (ECF No. 1-1 ¶ 40.) These "actions" constitute "a separate and independent tort from the contractual breaches inflicted by AVL." (ECF No. 1-1 ¶ 41.)

The Baldwins seek "not less than $40,000" in damages for Count II. (ECF No. 1-1 ¶ 42.) And, pursuant to the VCPA, the Baldwins seek treble damages reasonable attorney's fees. (ECF No. 1-1, at 15.)

At least one Virginia federal court already has ruled that the Carmack Amendment preempts the VCPA. *See Rehm v. Baltimore Storage Co.*, 300 F.Supp.2d 408, 414 (W.D. Va. 2004). The same is true here. Reading all allegations favorably, AVL acted as a carrier arranging for the interstate transportation of the Baldwins' belongings, meaning that this Virginia state law claim must be dismissed because, preempted by the Carmack Amendment, it fails to state a claim upon which relief can be granted by this federal court. *See Nachman*, 2018 WL

4186397, at *3; *see also Brentzel*, 2021 WL 6138286, at *5.  The motion to dismiss Count II will be granted.

### 2.    The Carmack Amendment Preempts Count III, the Breach of Contract Claim

Count III alleges that AVL breached its contract of promising to provide the Baldwins proper, conscientious, and honest services in moving their personal property to Hoschton, Georgia." (ECF No. 1-1 ¶ 44.)  These promises included the representation AVL's "truck would not share cargo with other customers or other moves or deliveries." (ECF No. 1-1 ¶ 19.)  The Baldwins seek losses of "not less than $40,000." (ECF No. 1-1 ¶ 45.)

Again, even reading all allegations favorably, AVL acted as a carrier arranging for the interstate transportation of the Baldwins' belongings when forming that contract, meaning that this Virginia state law claim must be dismissed because, preempted by the Carmack Amendment, it fails to state a claim upon which relief can be granted by this federal court.  The motion to dismiss Count III will be granted.

### 3.    The Carmack Amendment Preempts Count IV, the Common Law Fraud Claim

Count IV, the last substantive count at bar, alleges common law fraud. (ECF No. 1-1 ¶¶ 46–47.)  According to the Baldwins, AVL's "representations, if not false when originally made[,] became false", AVL "failed to disclose" the representations' falsity, "and the Baldwins reasonably relied" on the representations "to their damage." (ECF No. 1-1 ¶ 47.)  These claims stem largely from AVL's promises of excellent service.  The Baldwins point to the March 30, 2018 conversation with a caring AVL representative, to the promise to disconnect the appliances so the Baldwins could save money by not hiring others to do so, the promise not to share cargo with other customers, to advertising promises, and to a May 12, 2018 conversation with an AVL

representative who told Mrs. Baldwin that "his duty was to 'provide [her] with excellence in service." (ECF No. 1-1 ¶ 16.)

Again, even reading all allegations favorably, AVL acted as a carrier arranging for the interstate transportation of the Baldwins' belongings, meaning that this Virginia state law claim of fraud must be dismissed because it fails to state a claim upon which relief can be granted by this federal court. *See Nachman*, 2018 WL 4186397, at *3; *see also Brentzel*, 2021 WL 6138286, at *5. Moreover, even were the Court to entertain such a claim, the Baldwins would not meet the heightened pleading standards attendant to a common law fraud claim.[18]  *See U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014). The motion to dismiss Count IV will be granted. The Court will now turn to whether the Baldwins have plausibly stated a claim for conversion (Count I) or for punitive damages (Count V).

## C.   The Baldwins Have Failed to State a Claim for Punitive Damages (Count V)

In Count V, the Baldwins allege that AVL's actions "were intentional, malicious, wrongful[,] and were taken in reckless disregard of their duties to and the rights of the Baldwins." (ECF No. 1-1 ¶ 49.) While it is not clear this basis for relief warrants a separate count, the Baldwins request $7,500 in punitive damages in a separate count. (ECF No. 1-1, at 15.) *See Kamlar Corp. v. Haley*, 224 Va. 699, 707 (1983) (broadly providing that "a plaintiff seeking punitive damages should allege a willful, independent tort in a count separate from that which alleges a breach of contract"). Based on this Court's earlier rulings, the request might pertain to Count I's potential conversion claim, which seeks just $1,500 in damages.

---

[18] Allegations of fraud must meet the more stringent requirements of Federal Rule of Civil Procedure 9(b). *U.S. ex rel. Ahumada*, 756 F.3d at 280. Rule 9(b) requires that when "alleging fraud or mistake, a party must state with particularly the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).

### 1.   **Legal Standard:  Punitive Damages**

Under Virginia law, "punitive damages are appropriate where the defendant engaged in conduct that 'either approaches actual malice or exhibits extreme recklessness resulting in clearly foreseeable and immediate injury.'" *Adkins v. HBL, LLC*, No. 1:17cv774 (TSE), 2017 WL 4484246, at *2 (E.D. Va. July 18, 2017) (quoting *Cummings v. Fisher–Price, Inc.*, 857 F. Supp. 502, 505 (W.D. Va. 1994)).  To be entitled to punitive damages, a plaintiff must allege that a defendant "'acted wantonly, oppressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations.'" *Id.* (quoting *Wallen v. Allen*, 231 Va. 289, 297 (1986)).  To be entitled to punitive damages, a plaintiff must make a showing "beyond even gross negligence." *Id.* (citing *Blakely v. Austin–Weston Ctr. for Cosmetic Surgery, L.L.C.*, 348 F. Supp. 2d 673, 677 (E.D. Va. 2004)).

### 2.   **The Baldwins Fail to Allege Wrongful Conduct Rising to a Level That Would Support a Claim for Punitive Damages**

First, the Court declines to exercise supplemental jurisdiction over what remains of the Baldwins' Conversion count.  That renders any separate request for punitive damages moot.

Second, it is not clear that punitive damages should stand as a separate count rather than a request for relief.  In that case, Count V would be improperly pled.

Finally, even reading all allegations favorably and to the extent it can constitute a standalone count, the Baldwins have failed to allege in their sole surviving claim that AVL acted in a manner that rises to a level that would justify punitive damages. *See Adkins*, 2017 WL 4484246, at *2.  The Complaint is bereft of any allegation that when AVL temporarily transported the Baldwins' property to North Carolina for seemingly one night, AVL acted in a manner that approached "actual malice" or suggests "extreme recklessness resulting in clearly foreseeable and immediate injury.'" *See id.* (internal quotation marks omitted).  The Baldwins

26

present an AVL employee who believed he was required to conduct the roundtrip North Carolina trip, and who would return to Richmond the next day to take their property to ServPro in Virginia.  While he acted in a rude and offensive manner, no allegations in the Complaint allow a reasonable inference that this temporary delay would result in "clearly foreseeable and immediate injury."  *See Adkins*, 2017 WL 4484246, at *2.  Moreover, even read favorably, the Complaint contains no allegations that AVL or its employees acted with malice, wantonly, oppressively, or "'with such malice as to evince a spirit of malice or criminal indifference to civil obligations.'"  *See id.* (quoting *Wallen*, 231 Va. at 297.)  Thus, to the extent necessary, the Court will grant the motion to dismiss Count V.

### IV.  Conclusion

For the foregoing reasons, the Court will grant in part AVL's Motion to Dismiss.  (ECF No. 4.)

The Court will dismiss Count II (VCPA), Count III (breach of contract), Count IV (common law fraud), and Count V (punitive damages) in their entirety.  Although factual development might clarify the viability of part of Count I's $1,500 conversion claim, the Court will decline to exercise supplemental jurisdiction over that claim, and will remand the claim to the Circuit Court for Hanover County, Virginia.

An appropriate Order shall issue.

Date: **3/4/24**
Richmond, Virginia

_____
M. Hannah Lauck
United States District Judge